**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HCC AVIATION INSURANCE GROUP, INC., and UNIVERSAL LOSS MANAGEMENT, INC.,** | § § § § | |
| **Petitioners,** | § § | |
| **v.** | § § | **Civil Action No. 3:05-CV-744-M (BH)** |
| **EMPLOYERS REINSURANCE CORPORATION,** | § § § | |
| **Respondent.** | § | **Referred Motion** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to the District Court's *Order of Referral*, filed December 19, 2007, the following

motions were referred to this Court for hearing, if necessary, and for issuance of findings of fact and

recommendations to the District Court for disposition:

(1)     *Petitioners' Fee Application* ("Mot."), filed September 28, 2007;

(2)     *Appendix Supporting Petitioners' Fee Application* ("Mot. App."), filed September 28, 2007;[1]

(3)     *Respondent's Brief in Opposition to Petitioner's Fee Application* ("Resp."), filed October 12, 2007;

(4)     *Appendix Supporting Respondent's Brief in Opposition to Petitioners' Fee Application* ("Resp. App."), filed October 12, 2007;

(5)     *Petitioners' Reply in Support of Fee Application* ("Reply"), filed October 19, 2007;

(6)     *Respondent's Motion to Strike Petitioners' Reply in Support of Fee Application*

---

[1]Petitioners submitted their initial fee application with an appendix in support on August 28, 2007.  This appendix included relevant procedural history that was not included in the appendices submitted on September 28 or October 12, 2007.   Since the procedural history is not in dispute, the Court refers to the August 28, 2007 appendix (hereinafter, "Aug. 28 App.") where appropriate.

("Mot. Strike"), filed October 24, 2007;

(7) *Respondent's Memorandum in Support of its Motion to Strike Petitioners' Reply in Support of Fee Application* ("Mot. Strike Br."), filed October 24, 2007;

(8) *Appendix Supporting Respondent's Motion to Strike Petitioners' Reply in Support of Fee Application* ("Mot. Strike App."), filed October 24, 2007;

(9) *Petitioners' Response in Opposition to ERC's Motion to Strike Petitioners' Reply in Support of Fee Application* ("Mot. Strike Resp."), filed October 26, 2007;

(10) *Brief in Support of Petitioners' Response in Opposition to ERC's Motion to Strike Petitioners' Reply in Support of Fee Application* ("Mot. Strike Resp. Br."), filed October 26, 2007;

(11) *Employers Reinsurance Corporation's Reply in Support of Its Motion to Strike Petitioners' Reply Brief in Support of Fee Application* ("Mot. Strike Reply"), filed October 30, 2007; and

(12) *Appendix Supporting Employers Reinsurance Corporation's Reply in Support of Its Motion to Strike Petitioners' Reply Brief in Support of Fee Application* ("Mot. Strike Reply App."), filed October 30, 2007.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court finds that *Petitioners' Fee Application* should be **GRANTED** in part.

## I. BACKGROUND

The instant application for attorney's fees arises from the confirmation of an arbitration award relating to a 1996 aircraft accident. The aircraft's student-pilot sued his instructor in West Virginia state court for personal injuries he suffered during the crash. The instructor sought defense and indemnification from his insurer, Ranger Insurance Company ("Ranger"), and Ranger refused. The student-pilot and instructor settled the personal injury claims, and they jointly asserted bad faith claims against Ranger. Subsequently, Ranger settled the bad faith claims.

Ranger and its reinsurer, Respondent Employers Reinsurance Corporation ("ERC"), filed a lawsuit in West Virginia state court against its defense attorneys in the personal injury suit in

September of 2001.  Ranger and ERC also sued the "claims handling facilities" responsible for managing the Ranger insurance claims at issue, Petitioners HCC Aviation Insurance Group, Inc. ("HCC") and Universal Loss Management, Inc.  ("ULM").  On December 2, 2002, HCC and ULM stipulated with ERC that all claims remaining between them would be stayed and submitted to binding arbitration as required by the reinsurance agreement between HCC and Ranger.

The reinsurance agreement specified that the arbitration would be conducted under the Federal Arbitration Act ("FAA").  (Aug. 28 App. at 16).  It also expressly provided that after the arbitration panel issued its decision,

> [e]ither party may apply to the United States District Court for an order confirming any decision and the award; a judgment of that court shall thereupon be entered on any decision or award.  If such an order is issued, the attorney's fees of the party so applying and court costs will be paid by the party against whom confirmation is sought.

(Article 22(D), Aug. 28 App. at 17-8).

The arbitration took place in March 2005 in Dallas, Texas.  On April 8, 2005, the arbitration panel issued its final award and denied in its entirety ERC's request for $4.3 million in damages as well as costs and attorney's fees.  (*Id*. at 131-32).  The arbitration panel also denied HCC and ULM's request for legal fees and expenses.  (*Id*. at 132).

HCC and ULM filed their petition to confirm the arbitration award in the District Court for the Northern District of Texas on April 15, 2005.  (*Id*. at 133-37).  ERC subsequently filed a motion to vacate the arbitration award in the West Virginia state court on May 6, 2005, and a motion to dismiss or stay the arbitration award in the District Court on May 13, 2005.  After the District Court denied ERC's motion to dismiss, ERC filed a motion to vacate the arbitration award on July 8, 2005.  (*Id*. at 30, 72-84, 85-106).  The District Court vacated the award on September 13, 2005, and HCC

and ULM appealed the decision to the Fifth Circuit. After oral argument, the Fifth Circuit reversed the District Court on June 28, 2007. (Mot. App. at 1-13); *see HCC Aviation Ins. Group, Inc. v. Employers Reins. Corp.*, 243 Fed.Appx. 838 (5th Cir. 2007). Pursuant to the Fifth Circuit's mandate, the District Court entered its final judgment confirming the arbitration award on August 15, 2007. (Mot. App. at 1). In light of the Fifth Circuit's ruling and the District Court's entry of judgment, the West Virginia state court dismissed with prejudice on September 5, 2007, ERC's pending motion to vacate. (*Id.* at 14).

Petitioners now seek payment for more than two years of legal services provided in the post-arbitration confirmation litigation in the District Court, the Fifth Circuit, and in the West Virginia state court. (*See* Mot.).

## II. MOTION TO STRIKE

Respondent moves to strike Petitioners' 21-page reply brief because it exceeds the maximum page limitation set forth in Local Rule 7.2(c). (Mot. Strike at 1). Under the local rules, "[a] reply brief must not exceed 10 pages. Permission to file a brief in excess of these page limitations will be granted by the presiding judge only for extraordinary and compelling reasons." L.R. 7.2(c).

Petitioners contend that no page limitation applies to their reply because this Court's September 1, 2007 order regarding the fee application did not specify page limitations or require briefs in support. (Mot. Strike Resp. at 2). Since the September 1, 2007 order did not specify otherwise, the page limitations of the local rules governing motion practice applied to the briefs for the instant motion. Thus, the reply brief filed by Petitioners in support of their fee application was limited to 10 pages. *See* L.R. 7.2(c). Because Petitioners did not seek leave to file their 21-page reply brief, it does not comply with the local rules.

- 4 -

Petitioners assert in the alternative that if a page limitation applies, the rules governing motions for summary judgment are more applicable to fee applications than the rules governing motion practice. (Mot. Strike Resp. at 2-4). The 25-page limit for a reply to a motion for summary judgment is an express modification applicable only to motions for summary judgment; it does not affect the motion practice prescribed by local rules 7.1 through 7.3 that applies to fee applications. L.R. 56.1; L.R. 56.5(b).

Because Petitioners' reply brief exceeded the page limit without leave to do so, only the first ten pages will be considered. *Nat'l Architectural Prods. Co. v. Atlas-Telecom Servs.-USA*, 2007 WL 2051125, *3 (N.D. Tex. July 13, 2007). Accordingly, Respondent's motion should be **GRANTED**.

## III. RECOVERY OF FEES AND COSTS

The parties initially dispute whether Petitioners are entitled to recover their attorney's fees and costs in connection with post-arbitration proceeding in the District Court. The parties also dispute whether Petitioners may recover their fees and costs for proceedings in the Fifth Circuit and West Virginia court.

## A. <u>District Court</u>

Ordinarily, attorney's fees are not awarded to a prevailing party absent statutory authority or contractual language. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). In the instant case, HCC and ERC agreed to arbitrate their disputes in accordance with the reinsurance agreement between HCC and Ranger. (Aug. 28 App. at 16). Under the express terms of the agreement, if the United States District Court entered an order confirming any decision and the award and judgment, "*the attorney's fees of the party so applying and court costs will be paid by the party against whom confirmation is sought*." (Article 22(D), Aug. 28 App. at 17-8) (emphasis

added).  Petitioners submitted a petition to the District Court to confirm the arbitration award on

April 15, 2005.  Pursuant to the Fifth Circuit's mandate, the District Court entered judgment

confirming the arbitration award on August 15, 2007.  (Mot. App. at 1).  Since the District Court

issued the order of confirmation, a plain reading of the express contractual language of Article 22(D)

indicates that Petitioners are entitled to recover their attorney's fees and court costs arising from the

confirmation proceedings in the District Court.[2]

Notwithstanding the express contractual language of the arbitration agreement, Respondent

contends that Petitioners waived their right to recover their fees and costs by failing to plead their

intention to seek attorneys' fees as special damages when they filed their petition to confirm the

arbitration award.  (Resp. at 3-4).  In support of this contention, Respondent cites to Federal Rule

of Civil Procedure 9(g), which requires special damages (such as attorney's fees) to be specifically

stated in a complaint in order to be claimed.  (Mot. Resp. at 4); Fed. R. Civ. P. 9(g); *see United

Industries v. Simon-Hartley*, 91 F.3d 762, 764-65 (5th Cir. 1996) (considering attorney's fees to be

special damages).  The premise underlying this assertion is that Petitioners' application for

confirmation is a pleading.  The FAA, which applies to the arbitration proceedings between the

parties, considers an application for confirmation of an award to be a motion, not a pleading

initiating an action. 9 U.S.C. § 6.  Indeed, relevant case law from this circuit distinguishes motions

to confirm arbitration awards from pleadings initiating actions.  *Alstom Power, Inc. v. S&B Eng'rs

& Constructors, Ltd.*, 2007 WL 1284968, *2 (N.D. Tex. Apr. 30, 2007) (motion to confirm

arbitration award is not an action and thus is not subject to voluntary dismissal under Rule 41);

---

[2]Because the Court finds that the express contractual language of the arbitration agreement supports
Petitioner's entitlement to fees, it need not consider their alternative arguments for fees under Federal Rules of Civil
Procedure 54(c) and 10(c).  *See* Mot. at 11-13; Resp. at 5-10.

*SmartPrice.com, Inc. v. Long Distance Servs., Inc.*, 2007 WL 1341412, *3 (W.D. Tex. May 4, 2007) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006)) (motion to confirm arbitration award is a motion in an ongoing proceeding, rather than a complaint initiating a plenary action). Since Petitioners' April 15, 2005 filing with the District Court is a motion and not a pleading, it is not subject to the specific pleading requirements of Rule 9(g). Petitioners therefore were not required to specifically state their request for attorney's fees when they filed their motion to confirm the arbitration award.

**B.** **Fifth Circuit**

Having determined that Petitioners are entitled to recover their attorney's fees and costs from the post-arbitration proceedings in the District Court, the Court next considers whether they may also recover expenses from proceedings in the Fifth Circuit.

It is well-established precedent that a party entitled to recover attorney's fees and costs at trial is also entitled to recover them for successfully defending the case on appeal. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 436 (5th Cir. 2003) (finding that plaintiff was entitled to attorney's fees relating to its defense of the district court judgment on appeal) (citing *Gunter v. Bailey*, 808 S.W.2d 163, 165-66 (Tex.App.-El Paso1991, *no writ*)). In the instant case, the fees and costs Petitioners incurred on appeal to the Fifth Circuit necessarily were incurred as part of their request for judicial confirmation. Since the parties entered into an agreement that the fees and costs incurred in securing judicial confirmation would be paid by the party against whom confirmation is sought, the Court finds that Petitioners are entitled to attorney's fees and court costs incurred on appeal to the Fifth Circuit. *DP Solutions*, 353 F.3d at 436.

## C.    West Virginia State Court

The Court next considers whether Petitioners are entitled to recover fees and expenses incurred from the post-arbitration proceedings in the West Virginia state court.  Respondent initiated a motion to vacate the arbitration award in West Virginia on May 6, 2005, approximately three weeks after Petitioners filed their motion to confirm in the District Court.  The Anti-Injunction Act precluded Petitioners from requesting the District Court to enjoin the West Virginia proceedings. *See* 28 U.S.C. § 2283.  Petitioners therefore were required to continue litigation in the parallel state court proceeding to prevent the West Virginia court from vacating the arbitration award.

Respondent maintains that it filed its motion to vacate in West Virginia because the December 2, 2002 order from the West Virginia Court retained jurisdiction over the matters referred to arbitration.  (Resp. at 12; Aug. App. at 50).  This argument ignores the express contractual language of Article 22(D) of the reinsurance treaty, which stated that the District Court was the appropriate forum for requesting the order of confirmation.  *See also* 9 U.S.C. § 9 (agreement specifies the court for confirmation).  Additionally, Respondent declined to follow the Federal Arbitration Act, which designates the District Court as the appropriate forum for a motion to vacate. 9 U.S.C. § 10.

Respondent also contends that the motion to vacate was not a proceeding to confirm the arbitration award and therefore does not fall within the purview of Article 22(D). (Resp. at 12).  The motion to vacate, however, necessarily raised the legal issue of the confirmation of the arbitration award.  Indeed, the issue of confirmation was so central to the motion to vacate that once the District Court confirmed the petition for confirmation, the West Virginia court dismissed the motion to vacate with prejudice.  *See* Mot. App. at 14.

Essentially, Respondent seeks to prevent Petitioners from recovering legal expenses incurred as a direct result of its own decision to pursue a parallel state court proceeding despite express contractual language designating the District Court as the appropriate forum. The expenses incurred by Petitioners' defense of the motion to vacate were part of the confirmation proceedings, and under Article 22(D), Petitioners are entitled to recover attorney's fees and costs incurred in West Virginia state court proceedings.

## IV. PETITIONERS' ATTORNEY'S FEES

Having determined that Petitioners are entitled to recover their fees and expenses incurred in the District Court, Fifth Circuit and West Virginia state court, the Court turns to whether the fees and expenses are reasonable. Petitioners seek $335,936.45 in attorney's fees by this application: $327,811.45 for attorney's fees in the confirmation litigation prior to September 1, 2007, and $8,125.00 for attorney's fees in conjunction with this application. (Mot. at 13).

### A.    Methodology for Calculation of Attorney's Fees

In adjudicating an attorney's fees award, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *Louisiana Power & Light Co.*, 50 F.3d at 324. In the second step of the lodestar method, a court must consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of the twelve factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th

Cir.1974).[3] *Riley*, 99 F.3d at 760; *Louisiana Power & Light*, 50 F.3d at 331. "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). The most critical factor in determining the reasonableness of an attorney's fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436.

**B.    Calculation of the Lodestar**

The first step in the lodestar analysis requires the court to determine the reasonable number of hours expended by Petitioners' counsel, as well as their reasonable hourly rate. Petitioners offer time records and affidavits in support of their application.

**1.    Reasonable Number of Hours**

Petitioners contend that they expended a total of 746.95 hours of attorney time in the confirmation litigation prior to September 1, 2007. (Mot. at 13).[4] When this number is combined with the 25 hours expended in preparation of this fee application, (*see* Mot. at 13; Mot. App. at 4, ¶12), the 771.95 hours sought by Petitioners are divided as follows:

| | |
|---|---|
| Richard P. Colquitt | 609.9   hours |
| William J. Boyce | 162.05 hours |

---

[3]The twelve factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987) (citing *Johnson*, 488 F.2d at 717-19).

[4]The affidavit of Richard Colquitt states that Petitioners billed a total of 838.65 hours of attorney time in the confirmation litigation. (Mot. App. at 2, ¶6). Petitioners do not offer an explanation for the discrepancy between the two numbers sought, so the Court utilizes the lower number of 746.95 hours.

Respondent raises a number of objections to Petitioners' fee application.

### a.    Use of Block Billing

Respondent objects to Petitioners' use of "block billing" to record the amount of time spent on each task. (Resp. at 16-23). "Block billing" is a "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Glass v. U.S.*, 335 F.Supp.2d 736, 739 (N.D. Tex. 2004) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534 n. 15 (10th Cir.1996)). The use of "block billing" or "lumped" time entries is problematic because it prevents the court from evaluating the reasonableness of the bill. *Hollowell v. Orleans Regional Hosp., LLC*, 217 F.3d 379, 392-93 (5th Cir. 2000). Respondent does not cite to specific entries, but rather alleges that all of the time entries are lumped together.

In support of their fee application, Petitioners provide invoices of the work performed in connection with the lawsuit. As required by this Court's September 1, 2007 order, each entry contains the date, the name of the attorney, the amount of time expended down to the tenth of an hour, and a brief description of the work performed. (*See* docket #40 at 3-4). While many of the daily entries contain multiple tasks without an itemization of the amount of time spent on each task, the descriptions are sufficiently detailed for the Court to assess the reasonableness of the work performed. *Hollowell*, 217 F.3d at 392-93. Moreover, without objections to specific entries, Respondent has not shown that the entries are unreasonable.

### b.    Time Unrelated to the Litigation

Respondent contends that Petitioners billed for work unrelated to the confirmation proceedings. Specifically, Respondent objects to the 42.6 hours Mr. Colquitt billed for contacts with

HCC's arbitrators.[5]  (Resp. at 17-21; *see* Mot. App. at 37-38, 41-43, 46, 48, 53-54).  Respondent also objects to the 0.5 hours Mr. Colquitt billed for discussions on matters that were not referred to arbitration.  (Resp. at 19; *see* Mot. App. at 48).

Hours which are not "reasonably expended on the litigation" should be excluded from any award.  *Alberti v. Klevenhagen*, 896 F.2d 927, 933-34 (5th Cir. 1990), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir.1990); *see also Hensley*, 461 U.S. at 434.  All of Mr. Colquitt's contacts with the arbitrator took place after the arbitration award was issued on April 8, 2005.  Petitioner has not shown that these 42.6 hours were reasonably expended since the arbitrator was not involved in the confirmation litigation.  Some of the entries to which Respondent objects contain tasks in addition to contact with the arbitrator.  (*See* Mot. App. at 38, 41-43) (entries for May 19, 2005; June 6, 2005; September 19, 2005; October 5, 2005).  Petitioners did not provide the number of hours spent on each task within a given entry, and the Court therefore cannot segregate the specific number of hours expended on contact with the arbitrator from the other tasks performed.  As a result, the Court excludes all time in those entries.  *Rappaport v. State Farm Lloyds*, 2000 WL 769224, at *4 (N.D. Tex. June 13, 2000) (denying fees requested for a specific period after finding that the failure to segregate made it "*impossible* for the Court to determine the amount of time reasonably expended") (emphasis in original).  As for the 0.5 hours requested for discussions with attorneys on matters not referred to arbitration, these hours were not reasonably expended on the confirmation litigation.  Accordingly, 43.1 hours are deducted from the total hours expended by Mr. Colquitt.  *Alberti*, 896 F.2d at 933-34.

---

[5] Respondent contends that Petitioners billed for 1.7 hours for discussions with the Dan Schmidt, one of HCC's arbitrators, on April 22, 2005.  (Resp. at 17).  The billing records do not reflect this conversation took place on this date.  (*See* Mot. App. at 37).  The Court therefore overrules Respondent's objection to these 1.7 hours.

### c. Unreasonable, Excessive, and Duplicative Entries

Respondent also objects that many of Petitioners' entries are unreasonable, excessive, or duplicative.

Respondent objects to Petitioners' request for non-attorney work performed by attorneys. On April 26, 2005, Mr. Colquitt billed 1.8 hours to review a returned package for attempted service and to investigate the location of an agent for service. (Resp. at 17; Mot. App. at 37). Mr. Colquitt also billed 0.2 hours on September 30, 2005, to review a file-stamp notice of appeal. (Resp. at 18; Mot. App. at 43). Mr. Boyce requested 2 hours for work he performed on July 28, 2006, to prepare a table of contents and an index of authorities. (Resp. at 21; Mot. App. at 53). None of these tasks required the involvement of an attorney, and Petitioners present no argument for why senior partners should be compensated at their customary rate for non-attorney work. *See Johnson*, 488 F.2d at 717 (administrative work performed by attorneys may command a lesser rate). Since Petitioners did not meet their burden to provide evidence of a reasonable rate for non-attorney work, (*see* Mot. App. at 32-35, 66-68), these 4 hours are eliminated from the fee request.

Respondent next objects to the 77.9 hours Mr. Colquitt spent on issues related to the appellate brief and oral argument because it was Mr. Boyce who drafted the appellate brief and presented oral argument to the Fifth Circuit. (Resp. at 20-21; *see* Mot. App. at 49-50, 53, 56). Respondent contends that given Mr. Boyce's experience in appellate matters, the hours requested by Mr. Colquitt are duplicative and should be stricken. The Court recognizes the benefits of collaboration between two attorneys on a complex issue; one attorney may be more skilled in researching and preparing a portion of the brief and oral argument than the other. However, given Mr. Boyce's experience in appellate matters (as evidenced by his hourly rate) it is not apparent that

the 77.9 hours of assistance Mr. Colquitt provided were reasonably expended.  Petitioners did not write off any of these hours, and the Court finds that the request is unreasonable.  The Court therefore reduces Mr. Colquitt's request for 77.9 hours performed on appellate matters by half to 38.95 hours.

Respondent also objects to Petitioners' request for 2.5 hours to obtain a consensual extension of time to file a brief and 13.9 hours to prepare a final judgment confirming the arbitration award.  (Resp. at 20, 23; Mot. App. at 49).  The request for these 16.4 hours is excessive given the consensual nature of the request for extension and the fact that the one page final judgment by the District Court required no action by counsel.  The failure to reduce these two requests for simple matters demonstrates a lack of good billing judgment.  *See Hensley*, 461 U.S. at 433; *see also Alberti*, 896 F.2d at 930 ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but hours written off"); *Scribner v. Waffle House, Inc.*, 1997 WL 446453, at *2 (N.D. Tex. July 28, 1997) ("Because there is no record that the Plaintiff exercised billing judgment, Plaintiffs are ordered to resubmit its hourly billing report to include evidence that they in fact exercised billing judgment.").  Accordingly, the Court reduces the request for these two tasks from 16.4 hours to two hours.

Respondent also contends that Mr. Colquitt expended an excessive amount of time researching and drafting briefs related to the motion to vacate as well as the motion for fees.  (Resp. at 17-18, 23).  Petitioners request approximately 250 hours related to the motion to vacate and approximately 153.6 hours related to the motion for fees.[6]  *Id.*  Respondent contends that neither of these motions was so complex as to require the amount of time expended.  A review of the pleadings

---

[6]The 153.6 hours is the sum of the 128.6 hours for the fee application prior to September 1, 2007, and the 25 hours thereafter.  *See* Mot. App. at 35, 59, 62-63.

finds that Petitioners were required to address a number of complex issues, such as vacatur in a parallel court proceeding and whether Article 22(D) of the arbitration provision encompassed fees for work performed in the 5th Circuit and West Virginia courts. The Court notes, however, that there is no indication that Petitioners wrote off any excessive, redundant, or unproductive hours that might have been part of the hours at issue. *See Scribner*, 1997 WL 446453, at *2. The Court therefore reduces the hours requested by ten percent to 225 hours for the motion to vacate and 138.24 hours for the fee application.

### d. Travel Time

Respondent next objects to how Petitioners billed their travel time to New Orleans for argument before the Fifth Circuit. (Resp. at 22). "Time spent for travel should not be billed at the same hourly rate sought for active legal work." *Hopwood v. State of Texas*, 999 F. Supp. 872, 914 (W.D. Tex. 1998), *rev'd on other grounds* 236 F.3d 256 (5th Cir. 2000). Mr. Boyce billed a total of 14 hours for his travel, preparation, and participation related to oral argument. His entries on February 4 and 5, 2007, fail to segregate between travel time and active legal work. (*See* Mot. App. at 57). Since the Court cannot distinguish between travel time and active legal work and since travel time should be billed at a lower hourly rate, the Court reduces the 14 hours requested by Mr. Boyce by fifty percent to seven hours. *Hopwood*, 999 F.Supp. at 914 (citing *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (affirming the district court's decision to completely disallow compensation for travel time)); *Rappaport*, 2000 WL 769224, at *4.

Mr. Colquitt billed 8.5 hours for travel to oral argument, but he did not participate in oral argument. He has therefore not met his burden to show that these 8.5 hours were reasonable, and they will be deducted from the amount of time he claimed.

###### e.      Vagueness

Respondent objects to the specificity of Mr. Boyce's entries and contends that they are too vague to describe the actual work performed on file.  (Resp. at 19, 22).  The majority of Mr. Boyce's entries are very brief descriptions of the work performed, such as "draft appellants brief, "reply brief," "edit reply brief," and "oral argument preparation."  (*See e.g.*, Mot. App. at 49, 53).  The Fifth Circuit has found that these entries, as a general rule, are too vague to sufficiently describe the work performed on litigation.  *See League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1236 (5th Cir. 1997) (disapproving of "research and review of cases" and noting that a complete entry would show "the date, the number of hours spent (calculated to the tenth of an hour), and a short *but thorough* description of the services rendered") (emphasis added); *see also Hopwood*, 999 F. Supp. at 916 n.93 (finding that "REVIEW AND REVISE BRIEF," and "LEGAL RESEARCH RE 5TH CIRCUIT ISSUES," were "too vague and brief to inform the Court precisely what work was done")).  Since the Court cannot accurately assess the reasonableness of the work performed by Mr. Boyce, and since Mr. Boyce did not comply with the instructions this Court issued in its September 1, 2007, order, the Court finds that a twenty percent reduction in all hours billed by Mr. Boyce is appropriate.  *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997) ("Litigants clearly 'take their chances' that the district court will reject or reduce fee awards if they submit vague or incomplete applications").

To summarize, the hours awarded to Mr. Colquitt and Mr. Boyce are as follows:

|  | requested | deducted | overall reduction | awarded |
|---|---|---|---|---|
| Mr. Colquitt | 609.9 | 285.55[7] | none | 324.35 |
| Mr. Colquitt (fee application) | 153.6 | none | 10% | 138.24 |
| Mr. Boyce | 162.05 | 9 | 20% | 122.44 |

**2.      Reasonable Hourly Rates**

Petitioners assert that the hourly rate of $325 is reasonable for Mr. Colquitt.  They further assert that the hourly rate of $475 prior to January 1, 2007, and $530 thereafter is reasonable for Mr. Boyce.  In support of these assertions, they present affidavits by their counsel attesting to their qualifications, experience, reputation, and ability.  (*See* Mot. App. at 32-35, 66-68).

**a.      Rates Charged by Petitioners**

Mr. Colquitt's rate of $325 per hour is a reasonable rate in the Dallas legal community for legal services by attorneys with the level of ability, competence, twenty-five years of experience, and skill of Mr. Colquitt in the field of insurance coverage and post-arbitration confirmation litigation.  Mr. Boyce's rate of $475 per hour is a reasonable rate in the Dallas legal community for legal services by attorneys with the level of ability, competence, twenty years of experience, and skill of Mr. Boyce in the field of civil appellate law.  The Court, however, does not consider Mr. Boyce's fee of $530 for work performed after January 1, 2007, to be reasonable because petitioners offer no explanation for the $55 per hour increase.  (*See* Mot. App. at 67).  The Court therefore

---

[7]This sum includes: (1) the 153.6 hours Petitioners spent on the fee application; (2) the 25 hours deducted from the motion to vacate (10% of the 250 hours requested); and (3) 106.95 hours in other deductions (43.1 + 2 + 38.95 + 14.4 + 8.5).

limits all work performed by Mr. Boyce to a rate of $475 per hour. In assessing the reasonableness of Petitioners' rates, the Court considered the affidavits of Mr. Colquitt and Mr. Boyce submitted in support of the fee application. The Court further makes its determination based on its knowledge of rates charged for legal services by attorneys with the level of skill, competence, and ability of Petitioners' counsel in the Dallas legal community, and its experience in setting attorney's fees in other cases.

### b. Failure to Use Associate Attorneys

Respondent contends that it was unreasonable for Petitioners to bill at a partner rate for work that could have been performed by an associate attorney. (Resp. at 16-23). Respondent raises specific objections to the 291.6 hours Petitioners spent on legal research, analyzing case law, and drafting briefs on various days. (Resp. at 16, 18, 23) (objecting to 103, 150, and 38.6 hours, respectively).

Two of the factors a court must consider in whether a rate is reasonable are the skill required to perform the legal services properly and the experience, reputation, and ability of the attorneys. *Johnson*, 488 F.2d at 717-19. Here, Respondent contends that an associate who charges a lower rate could have achieved the same result as the partner did in the 291.6 hours Petitioners billed for their services. The assumption underlying this argument is that a less experienced and cheaper associate attorney could achieve the same result as the more experienced but more expensive partner who performed the task at hand. Even assuming that this same work could have been performed by an associate at a lower fee, a less-experienced associate would presumably spend more hours on the task at hand. It is therefore not apparent that any meaningful reduction on the total amount would be achieved. Without such a showing, the Court declines to adjust the hourly rate for the work

performed on these 291.6 hours due to the relative efficiency gained by assigning the task to a partner.

Respondent also raises general objections to the work Petitioners performed by partners instead of associates between November 2005 and October 17, 2006. (Resp. at 19, 21, 23). Since these assertions are conclusory, they will not be considered by the Court.

### c. Rate for Fee Application

Respondent objects to Mr. Colquitt's use of his normal rate of $325 per hour for time spent seeking reimbursement of fees. (Resp. at 23). An attorney should not command his normal rate for work spent on computing and enforcing attorney's fees. *Hopwood*, 999 F.Supp. at 918 (citing *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990)). The Court therefore finds that a rate of $275 for the time Mr. Colquitt spent on the fee application is appropriate. *See id*.

### 3. Computer-based Legal Research

Petitioners request $29,238.70 for computer-based legal research charges as part of their attorney's fees. (Mot. at 13, n. 1). Respondent raises no objection to this amount, and the Court therefore grants the request.[8]

### 4. Lodestar

After consideration of Respondent's objections and making appropriate reductions to requested hours, the Court calculates the lodestar as follows:

---

[8]While the Fifth Circuit has yet to address this issue, a number of courts in this circuit have found that the cost of reasonable computerized legal research is recoverable as attorney's fees. *Camargo v. Trammell Crow Interest Co.*, 318 F.Supp.2d 448, 451 (E.D. Tex. 2004) (citations omitted); *Javelin Investments, LLC v. McGinnis*, 2007 WL 1003856, at *4 (S.D. Tex. Mar. 30, 2007) (charges for computer-aided legal research is arguably recoverable as attorney's fees but declining to award them to defendant because plaintiff objected and because it was unclear that the charges were paid by the law firm to the third-party provider).

|  | awarded | rate | lodestar |
|---|---|---|---|
| Mr. Colquitt | 324.35 | $ 325 | $ 105,413.75 |
| Mr. Colquitt  (fee application) | 138.24 | $ 275 | $   38,016 |
| Mr. Boyce | 122.44 | $ 475 | $   58,159 |
| Computer-based legal research |  |  | $   29,238.70 |
| TOTAL |  |  | $ 230,827.45 |

The Court thus finds that a reasonable number of hours times a reasonable hourly rate yields a lodestar of $230,827.45.

## C.    **Adjustments to Lodestar Calculation**

In the second step of the lodestar method, the Court must consider whether the lodestar figure should be adjusted upward or downward. *Riley*, 99 F.3d at 760. The Court has considered each of the *Johnson* factors in determining what constitutes reasonable attorney's fees in this action and applied them where appropriate. Many of the *Johnson* factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should therefore not be double-counted. *Jason D.W.*, 158 F.3d at 210. Moreover, some factors deserve more weight than others. *Id.* As noted above, the Supreme Court has held that "the most critical factor" in determining reasonableness of an attorney's fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436; *Migis*, 135 F.3d at 1047.

Neither party presented an argument for an enhancement or reduction of the fee award, and the Court finds that no further adjustment to the fee award is warranted.

## V.  COSTS

A prevailing party in a civil action is entitled to recover its costs "unless the court otherwise

directs." Fed. R. Civ. P. 54(d). Taxable costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of a deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. *See* 28 U.S.C. §§ 1821, 1920. A district court may decline to award statutory costs but may not award costs omitted from the statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir.1993).

Petitioners seek $5,873.02 in taxable costs and nontaxable expenses. (Mot. at 13). This request is supported by the itemized billing records for recoverable costs. (*See* Mot. App.). Respondent raises no objections to the costs sought by Petitioners, and Petitioner's request should therefore be granted.

## VI. CONCLUSION

For the reasons stated above, the Court recommends that *Petitioners' Fee Application* should be **GRANTED** in part. Petitioners should recover the amount of $230,827.45 as reasonable attorney's fees. The amount of awarded costs should be $5,873.02. The total awarded for attorney's fees and costs on *Petitioners' Fee Application* should be $236,700.47.

**SO RECOMMENDED** on this 25th day of February, 2008.


**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE